UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re: Chapter 11 Cases

WRS HOLDING COMPANY, *et al.*,[1] Case No. 14-_____________
(Joint Administration Pending)

Debtors.
____________________________________/

**DEBTORS' EXPEDITED MOTION FOR ORDER (I) AUTHORIZING THE DEBTORS (A) TO USE CASH COLLATERAL ON AN INTERIM BASIS PURSUANT TO 11 U.S.C. § 363, AND (B) TO GRANT ADEQUATE PROTECTION IN CONNECTION THEREWITH PURSUANT TO 11 U.S.C. §§ 361, 363 AND 507, AND (II) SCHEDULING A FINAL HEARING UNDER BANKRUPTCY RULE 4001**

WRS Holding Company ("WRS Holding"), Compass Environmental, Inc. ("Compass Environmental") and WRS Infrastructure & Environment, Inc. ("WRS Infrastructure," with WRS Holding and Compass Environmental, the "Debtors"), by and through their undersigned proposed counsel, file this motion seeking entry of an interim order (the "Interim Order"), and for entry of a final order (the "Final Order", together with the Interim Order, collectively, the "Cash Collateral Orders"), pursuant to sections 105, 361, 362, 363, and 507(b) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2081-1(f) of the Local Rules of United States Bankruptcy Court for the Middle District of Florida (the "Local Rules"), (i) authorizing the Debtors to (a) to use cash collateral on an interim basis, and (b) provide adequate protection therewith; and, (ii) scheduling an interim hearing on an expedited basis and a final hearing on the Motion. In support of this Motion, the Debtors rely upon the *Declaration in*

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) WRS Holding Company (2129); (ii) Compass Environmental, Inc. (9637); and (iii) WRS Infrastructure & Environment, Inc. (0585). The address for all of the Debtors is 221 Hobbs Street, Suite 108, Tampa, Florida 33619.

*Support of First Day Pleadings* (the "First Day Declaration") filed on the Petition Date (as defined below), and respectfully state as follows:

**Jurisdiction and Venue**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 361, 362 363 and 507(b) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 2081-1(f) which lists first-day pleadings, including cash collateral motions like this, that "shall be scheduled for hearing within three business days, if reasonably possible and if the motions are served electronically or by facsimile transmission." The Debtors ask that this Motion be heard at the same time as the other first day pleadings filed contemporaneously herewith.

**Disclosures Under Bankruptcy Rules and Local Rules**

4. The following disclosures are provided in conformance with the requirements of Bankruptcy Rule 4001(b), and Local Rule 2081-1(f):

a. Cash Collateral: Any collateral constituting "Cash Collateral", as such term is defined in section 363 of the Bankruptcy Code. As of the Petition Date, the Debtors hold approximately $2.65 million in Cash Collateral;

b. Party With an Interest in Cash Collateral: Northbrook Bank & Trust Company, in its capacity as administrative agent ("Agent") for the lenders (the "Lenders") from time to time party to the Credit Agreement (defined below) has an interest (for the benefit of the Lenders) in the Cash Collateral. No other entity has an interest in the Cash Collateral. Pursuant to the Loan Documents (defined below), Agent (for the benefit of the Lenders) has a security interest in substantially all the assets of the Debtors (including without limitation, all accounts, chattel paper, goods, inventory, equipment, instruments, investment property, documents, deposit accounts, letter of

credit rights, general intangibles) to secure the obligations of Debtors to the Agent and Lenders. As of the Petition Date, the Debtors owe not less than (a) $9,250,000, plus interest under the Term Notes (defined below) (b) $9,601,532.92 plus interest under the Revolver Notes; and (c) $2,598,448 under letters of credit issued by Agent, in each case, together with all fees, costs and expenses required to be reimbursed by the Debtors pursuant to the Loan Documents.

c. Proposed Use of Cash Collateral[2]: The Debtors propose to use Cash Collateral for working capital purposes, including but not limited to, operating the Debtors' businesses, and such use shall be limited to the payment of such amounts and for such items set forth in the operating budget attached hereto as **Exhibit B** to the Motion (the "Budget"); as and when such expenses become due and payable provided, however, that the Debtors' compliance with the Budget shall be subject to deviation, per line item, of no more than 10%, and an aggregate deviation of no more than 10%, and any deviation of more than 10% on any line item or in the overall Budget shall require the consent of the Agent or Court approval;

d. Termination Date: The Debtors seek authority to continue to use Cash Collateral until the Termination Date (as defined in the Cash Collateral Orders);

e. Adequate Protection: As adequate protection for the Debtors' use of Cash Collateral, Agent and Lenders shall receive adequate protection for the use of Cash Collateral in accordance with sections 361(2) and 363(e) of the Bankruptcy Code, in the form of a replacement lien on and in the Postpetition Collateral (as defined in the Cash Collateral Orders), which excludes Avoidance Actions (as defined below), and cash payments of Allowable 506(b) Amounts (as defined in the Cash Collateral Orders), which shall be provisionally applied subject to the terms of the Cash Collateral Orders; and

f. Cash Collateral Orders: The proposed form of Interim Order will be in substantially the same form as is attached hereto as **Exhibit A**.

[2] In addition to the use of Cash Collateral, the Debtors will likely need post-petition financing to finance working capital and their administrative expenses. The Debtors and the Agent are discussing the need for, and the possibility of, a post-petition financing facility. No agreement has been reached. If the Agent and the Debtors reach agreement on the terms of a post-petition financing arrangement, the Debtors will file a separate motion seeking approval of the financing pursuant to section 364 of the Bankruptcy Code.

**Background**

5. On the date hereof (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under the Bankruptcy Code.

6. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no official committee has yet been appointed in these chapter 11 cases.

7. WRS Holding owns 100% of the equity in each of WRS Infrastructure and Compass Environmental. For over 28 years, the Debtors have provided high quality environmental, remediation and civil construction services with an experienced, highly skilled technical and professional workforce. The Debtors are headquartered in Tampa, FL, but have operations throughout the United States.

8. For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.

9. On November 19, 2013, WRS Holding, Compass Environmental, and WRS Infrastructure executed and delivered to the Agent and Lenders, *inter alia* (i) two Term Notes – one in the principal amount of $7,142,857.14 and the other in the principal amount of $2,857,142.86 (together, the "Term Notes"); (ii) two Revolving Notes - one in the principal amount of $17,857,142.86 and the other in the principal amount of $7,142,857.14 (together the "Revolving Notes"); (iii) a Security Agreement; and (iv) a Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement") (the documents in clauses (i)-(iv) together with all other "Loan Documents" (as defined in the Credit Agreement), collectively the "Loan Documents").

10. Agent perfected the security interests granted by the Debtors by filing (a) UCC-1 Financing Statements with the Secretary of State of Delaware, file numbers 20134557881 and 20134558079, with respect to WRS Holding and Compass Environmental and (b) a UCC-1 Financing Statement with the Secretary of State of North Carolina, file number 20130109073H, with respect to WRS Infrastructure each filed on November 19, 2013.

11. In addition, WRS Holding executed a Pledge Agreement in favor of Agent (for the benefit of the Lenders) wherein it pledged its 100% interest in WRS Infrastructure and Compass Environmental to Agent as further collateral for the Obligations (as defined in the Credit Agreement).

12. Under the terms of the Security Agreement, the Debtors granted the Agent (for the benefit of the Lenders) a security interest in substantially all of their assets, including, without limitation, accounts, chattel paper, general intangibles, goods, inventory, equipment, instruments, deposit accounts, money, cash or cash equivalents (collectively, the "Lender Collateral"). The Lender Collateral specifically excludes (i) "intent to use" Trademarks or Trademark applications to the extent that the grant of a security interest therein would impair the validity or enforceability of such Trademark, (ii) stock of any foreign subsidiary in excess of 65% of the voting power of all classes of stock, and (iii) any item of General Intangible or Intellectual Property currently owned or after-acquired, but only to the extent that such items contains a term or is subject to a rule, law, statute or regulation that restricts, prohibits or requires consent for the creation, attachment, or perfection of security interest that are effective and enforceable under applicable law and not rendered ineffective by applicable law.

13. Pursuant to two Guaranty agreements dated November 19, 2013, each of Samstock, L.L.C. (an affiliate of the Debtors), and EGI-Fund (11-13) Investors, L.L.C. (a

majority owner of WRS Holding), guaranteed the Obligations of the Debtors to the Agent and Lenders.

14. Pursuant to the Loan Documents, the Debtors are required to make interest payments on a quarterly basis, on the last business day of each fiscal quarter until the Obligations mature pursuant to the terms of the Credit Agreement on November 19, 2016, or such earlier date pursuant to the terms and conditions of the Credit Agreement. As of July 1, 2014, the Debtors are current on their interest payments and no default had been declared under the Loan Documents. The filing of these chapter 11 cases constitutes an Event of Default under the Credit Agreement. As a result, and subject to section 506(b) of the Bankruptcy Code, from and after the Petition Date, the interest rates applicable to the Loans and Letter of Credit Fee (as each term is defined in the Credit Agreement) are automatically increased to the Default Rate (as defined in the Credit Agreement).

**Cash Collateral**

15. The Cash Collateral proposed to be used by the Debtors may include cash-on-hand and cash generated from the continued operations of the Debtors' businesses, including the collection of their accounts receivable. The Debtors believe that the cash may constitute "Cash Collateral" as that term is defined in the Bankruptcy Code. See 11 U.S.C. § 363(a). As section 363(a) states, cash collateral includes:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

16. Through this Motion, and in an abundance of caution, the Debtors seek to utilize Cash Collateral in order to maintain their businesses. The Debtors' request for use of Cash Collateral is meant to cover the Debtors' essential expenses contained in the Budget, and to ensure successful operations to allow the Debtors to advance a sale of their business as a going concern, or an orderly wind-down and sale of substantially all of the Debtors' assets. Those expenses include payment of wages, subcontractors, other laborers, taxes, insurance and other expenses that are needed to perform under the Debtors' contracts. The Debtors request the use of the Cash Collateral until the Termination Date (as defined in the Cash Collateral Orders).

17. As of the Petition Date, the Debtors and the Agent and Lenders were engaged in good faith discussions regarding the Debtors' use of Cash Collateral.

18. Unless authorized to use Cash Collateral the Debtors will be unable to operate their businesses.

19. As adequate protection for the use of Cash Collateral, the Debtors shall, with the Court's permission, grant the Agent and Lenders, nunc pro tunc to the Petition Date, a replacement lien on and in the Postpetition Collateral (as defined in the Cash Collateral Orders), which excludes Avoidance Actions (as defined below), and make cash payments of Allowable 506(b) Amounts (as defined in the Cash Collateral Orders), which shall be provisionally applied subject to the terms of the Cash Collateral Orders.

20. The filing of this Motion does not constitute an admission by the Debtors that the Agent holds valid liens on the Debtors' cash or cash equivalents or any other assets. The Debtors reserve the right, subject to Paragraph 7 of the Interim Order, to assert a Challenge (as defined in the Interim Order).

**Request for Preliminary Hearing to Consider Granting**
**Interim Order Authorizing Debtors to Use Cash Collateral**

21. Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use Cash Collateral may not be commenced earlier than 14 days after service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of Cash Collateral to the extent "necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(b)(2) & (c)(2). It is essential to the continued operation of the Debtors' business that they be authorized by this Court to use Cash Collateral as set forth in the Interim Order pending the final hearing on the Motion. Unless this Motion is approved on an interim basis, the Debtors will have difficulty paying their suppliers and satisfying their customer obligations, which would have a devastating effect on the Debtors' operations, customer base and revenues. Thus, funds are urgently needed to meet all of the Debtors' working capital and other liquidity needs. In the absence of immediate relief, the Debtors' attempts to continue their business in the ordinary course will be immediately and irreparably jeopardized.

22. Such interim relief is essential to enable the Debtors to fulfill their existing obligations, as specifically detailed in the Budget. These sums will be required to pay suppliers, subcontractors, employees, and other operating expenses that are the very minimum necessary for the Debtors to continue as a going concern for the benefit of all of its creditor constituencies, including the Agent and Lenders. Accordingly, the Debtors respectfully request approval of the Motion, pending a final hearing on the Motion, on an interim basis, on the terms and subject to the conditions set forth in the Interim Order and Budget, or on such other terms that the Court may deem appropriate.

**Argument and Citation of Authority**

23. Bankruptcy Code section 363(c)(2), which governs the postpetition use of cash collateral by a debtor in possession, provides as follows:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless —
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2)(A), (B).

24. The Debtors seek authorization to use cash collateral pursuant to 11 U.S.C. § 363(c)(2)(B). The cash collateral proposed to be used by the Debtors may include cash-on-hand and cash to be generated from the continued operations of the Debtors' businesses, including the collection of their accounts receivable. If the Debtors are unable to use cash collateral or obtain such additional liquidity, they will not be able to meet essential obligations thereby forcing a shutdown of their operations. Accordingly, the Debtors and their creditors face a substantial risk of immediate and irreparable harm if the relief sought herein is not permitted on an interim as well as final basis.

25. Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief. 11 U.S.C. § 361(1)-(3). What constitutes adequate protection must be decided on a case-by-case basis. See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-12397 (10th Cir. 1987); Martin v. U.S. (In re Martin), 761 F.2d 472, 474 (8th Cir. 1985); In re Shaw Indus., Inc., 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003).

26. The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) ("[t]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value of which he bargained prebankruptcy") (internal citations omitted); see also In re Carbone Companies, Inc., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("[t]he test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral"). It is well-established that a bankruptcy courts grant the use of cash collateral in order to preserve or enhance a debtor's ability to remain a going-concern. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984). In addition, the grant of a replacement lien provides ample adequate protection of a secure creditor's interest in cash collateral. O'Connor, 808 F.2d at 1397.

27. In exchange for the use of Cash Collateral and other transactions contemplated hereby, the Debtors propose, as adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code, as applicable, to grant Agent (for the benefit of the Lenders) a valid, perfected and enforceable replacement lien to, on and in the Postpetition Collateral.

28. In the event that diminution occurs in the value of the cash collateral in which Agent (on behalf of the Lenders) has an interest from and after the Petition Date as a result of the Debtors' use thereof in an amount in excess of the replacement lien granted herein, the Agent and Lenders shall have an administrative expense claim under section 507(b) of the Bankruptcy Code with priority over all other relevant administrative expense claims, subject to the Carve-Out (defined herein).

29. The Debtors request that the replacement lien granted to the Agent and Lenders, as well as any administrative expense claim granted to the Agent and Lenders pursuant to the terms of the Interim Order, be at all times subject and junior to the Carveout (as defined in the Cash Collateral Orders), on the terms and conditions set forth in the Cash Collateral Orders.

30. For the avoidance of any doubt, Agent (for the benefit of the Lenders) shall not be granted a replacement lien on or against any claims or causes of action arising under sections 542 through 550 of the Bankruptcy Code (collectively, the "Avoidance Actions") or on or against any proceeds of the Avoidance Actions.

31. Notice of this motion was served, in compliance with Federal Rule of Bankruptcy Procedure 4001(b), upon the Agent and Lenders, the Office of the United States Trustee, the Internal Revenue Service, and the persons and/or entities identified in the list of 20 largest unsecured creditors of the Debtors, as no unsecured creditors' committee has been appointed.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order substantially in the form attached hereto as **Exhibit A**: (i) authorizing the Debtors' use of Cash Collateral on an interim basis as set forth herein; (ii) setting an emergency interim hearing and final hearing to authorize the Debtors' use of Cash Collateral as set forth herein; and (iii) granting the Debtors such other and further relief as may be proper

and just.

Dated: July 24, 2014

Respectfully submitted,

BERGER SINGERMAN LLP
*Proposed Counsel for Debtors-in-Possession*
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
and
2650 North Military Trail, Ste. 240
Boca Raton, FL 33431
Telephone: (561) 241-9500
Facsimile: (561) 998-0028

By: *__/s/ Jordi Guso__*
Jordi Guso
Florida Bar No. 863580
jguso@bergersingerman.com
Paul Avron
Florida Bar No. 050814
pavron@bergersingerman.com

**EXHIBIT "A"**

**PROPOSED INTERIM ORDER**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **WRS HOLDING COMPANY, *et al.*,**[3] | ) | **Case No. 14-bk-08588** |
| | ) | |
| **Debtors.** | ) | **Joint Administration Requested** |

**INTERIM ORDER AUTHORIZING DEBTORS TO: (A) USE CASH COLLATERAL ON AN EXPEDITED BASIS PENDING A FINAL HEARING; AND (B) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO NORTHBROOK BANK & TRUST COMPANY, AS AGENT AND THE LENDERS**

This matter came before this Court on the motion (the "Motion") of WRS Holding Company, *et al.* (the "Debtors") requesting that this Court enter an interim order authorizing Debtors to: (a) use certain Cash Collateral on an expedited basis pending a Final Hearing; and (b) grant adequate protection and provide security and other relief to Northbrook Bank & Trust Company in its capacity as agent, and any of its successors or assigns, ("Agent") to the lenders party to Prepetition Credit Agreement, and any of their successors or assigns, ("Lenders"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference are made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion, and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b) and (d), and objections, if any, having been withdrawn, resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

[3] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: (i) WRS Holding Company (2129); (ii) Compass Environmental, Inc. (9637); and (iii) WRS Infrastructure & Environment, Inc. (0585). The address for all of the Debtors is 221 Hobbs Street, Suite 108, Tampa, Florida 33619.

A. On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. Debtors have retained possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

B. The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over this Motion is proper under 28 U.S.C. § 1409(a).

C. No Committee has yet been appointed in these Cases.

D. Subject to Paragraph 7 of this Order, Debtors admit, stipulate and agree that:

1. the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship among Debtors, Agent and Lenders;

2. the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents, all of which are deemed to be reaffirmed by the parties;

3. as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim in an amount not less than $21,911,615.16, exclusive of accrued and accruing Allowable 506(b) Amounts;

4. no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to contest, objection, recoupment, defense, counterclaim, offset, avoidance, recharacterization, subordination or other claim, cause of action or challenge of any nature under the Code, under applicable non-bankruptcy law or otherwise;

5. the Prepetition Liens are Priority Liens, subject to Permitted Priority Liens and secure payment of all of the Prepetition Debt;

6. Debtors do not have, and hereby release, and are forever barred from bringing any claims, counterclaims, causes of action, avoidance actions, including, without limitation, any actions arising under, in connection with, or pursuant to, any of Code sections 544, 545, 547, 548, 549, 550, or 553, (together, "Avoidance Actions"),

defenses or setoff rights relating to the Prepetition Documents, the Prepetition Liens, the Prepetition Debt, including, without limitation, any payments and any other transfers occurring before or after the Petition Date arising under or related to the Prepetition Documents, the Prepetition Liens, or the Prepetition Debt ("Transfers"), or otherwise, against the Agent, the Lenders, the initial transferee of any Transfer, any entity for whose benefit any Transfer was made, and any immediate or mediate transferee of an initial transferee, and their respective affiliates, subsidiaries, agents, officers, directors, employees, advisors, consultants, predecessors in interest, successors and assigns, (together, the "Lender Parties").

E. Agent and Lenders have consented to the terms of this Order and are entitled to adequate protection as set forth herein pursuant to Code §§ 361, 362 and 363 for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date.

F. Debtors need to use Cash Collateral as provided herein through the conclusion of the Final Hearing, in order to prevent immediate and irreparable harm to the estate and minimize disruption to and avoid the termination of their business operations. Entry of this Order will also enhance the possibility of maximizing the value of the Debtors' businesses.

G. The terms of this Order have been negotiated at arm's length and in good faith.

H. Under the circumstances of these Cases, this Order is a fair and reasonable response to Debtors' request for Agent's and Lenders' consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtors' estates and their creditors.

I. The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and (d) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

**WHEREFORE, IT IS HEREBY ORDERED THAT THE MOTION IS GRANTED, AND THAT:**

1. Authorization to Use Cash Collateral. Debtors are authorized to use Cash Collateral through the Termination Date solely (a) in accordance with the terms and provisions of this Order, (b) to the extent required to pay, when due, those expenses enumerated in the Budget, including the Carveout, subject to the Permitted Variance and (c) to pay Allowable 506(b) Amounts.

2. Procedure for Use of Cash Collateral.

(a) Delivery of Cash Collateral to Agent. Debtors shall deposit all Cash Collateral now or hereafter in their possession or control into the Blocked Account (or otherwise deliver such Cash Collateral to Agent in a manner satisfactory to Agent) promptly upon receipt thereof.

(b) Cash Collateral in Agent's or Lenders' Possession. Agent is authorized to collect upon, convert to cash and enforce checks, drafts, instruments and other forms of payment now or hereafter coming into its or any Lender's possession or control which constitute Aggregate Collateral or proceeds thereof. Prior to an Event of Default, Agent will remit all Cash Collateral for use in accordance with the terms of this Order.

(c) Application of Cash Collateral. Agent, at its election, is authorized to apply all Cash Collateral now or hereafter in Agent's or any Lender's possession or control to the payment of Prepetition Debt consisting of Allowable 506(b) Amounts as adequate protection. To the extent that an application to Prepetition Debt pursuant to the foregoing sentence resulted in the payment of an amount that is not an Allowable 506(b) Amount, the payment of such amount shall be deemed to be applied to the portion of the Prepetition Debt that constitutes a secured claim. Notwithstanding the foregoing, to the extent any Cash Collateral is applied pursuant to this Paragraph 2(c), Agent may, in its discretion, reverse such application (or any portion thereof) to allow for payment of additional expenses set forth in the Budget.

(d) Prohibition Against Use of Cash Collateral. Except as provided for in this Order, Debtors will not use or seek to use Cash Collateral, unless, in addition to the satisfaction of all requirements of Code § 363, Agent has consented to such order; provided, however, that if the Termination Date has occurred as a result of an Event of Default set forth in clauses (e), (i) or (l) of the definition of "Event of Default" set forth on Exhibit A, this Paragraph 2(d) will not prohibit the Debtors from seeking to use Cash Collateral, subject to approval of this Court.

(e) Prohibition Against Additional Debt. Debtors will not incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens, or which is given superpriority administrative expense status under Code §364(c)(1), unless, in

addition to the satisfaction of all requirements of Code §364: (1) Agent has consented to such order, (2) at the time such an order is entered, there are no Obligations outstanding or (3) such credit or debt is first used to indefeasibly pay the Obligations in full, in cash.

3. Adequate Protection of Interests of Agent and Lenders in the Prepetition Collateral and the Prepetition Liens. Agent and Lenders have consented to the terms of this Order, are entitled to the protections afforded a party acting in "good faith" under Code §363(m) and to adequate protection as set forth herein and to the extent required under Code §§ 361, 362 or 363 (including for any decrease in the value of such interests in the Prepetition Collateral from and after the Filing Date).

(a) Priority of Prepetition Liens/Allowance of Lenders' Claim. Subject to the terms of Paragraph 7 of this Order: (1) the Prepetition Liens shall constitute Priority Liens, subject only to the Permitted Priority Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable nonbankruptcy law and no Transfers in connection with the Prepetition Debt are subject to avoidance or claw back, including in connection with any Avoidance Action, from any of the Lender Parties; (4) the Prepetition Documents are valid and enforceable in all respects; and (5) Agent's and Lenders' claim with respect to the Prepetition Debt shall for all purposes constitute an allowed claim within the meaning of Code § 506 in an amount not less than $21,911,615.16, exclusive of accrued and accruing Allowable 506(b) Amounts.

(b) Replacement Liens. Agent is hereby granted the Replacement Liens, for the benefit of Lenders, as security for payment of the Prepetition Debt. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be properly perfected, valid and enforceable liens without any further action by Debtors, Agent or Lenders and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Cases. Notwithstanding the foregoing, Debtors are authorized to and shall execute and deliver to Agent such financing

statements, mortgages, instruments and other documents as Agent may request from time to time in respect of the Replacement Liens.

(c) Allowed Code § 507(b) Claim. If and to the extent the adequate protection of the interests of Agent and Lenders in the Prepetition Collateral granted pursuant to this Order are such that the aggregate amount of Cash Collateral used exceeds the value of the replacement liens granted to the Agent pursuant to this Order or otherwise proves insufficient (together, the Insufficiency"), Agent and Lenders shall have an allowed claim under Code § 507(b), subject to the Carveout, in the amount of any such Insufficiency, with priority over: (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Code; and (2) the claims of any other party in interest under Code § 507(b). Without limitation, the Agent, the Lenders, and each of the Lender Parties shall be entitled to a dollar for dollar set off and offset of any claim or cause of action against any of them by or on behalf of the Debtors or their estates, whether or not related to the Prepetition Documents, the Prepetition Liens, or the Prepetition Debts, against the unpaid amount of any Insufficiency owed to the Agent or the Lenders.

(d) Reaffirmation of Guaranty. Each Guaranty and all related security documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Agent and Lenders pursuant to Code § 363. Each Guarantor is and shall remain liable for the guaranteed obligations under each such Guaranty, including, without limitation, for all interest, fees, costs and expenses that accrue after the commencement of the Cases, whether or not such amounts are allowed in the Cases.

4. Termination Date; Rights and Remedies.

(a) Effect of Termination Date. Unless extended by the Court upon the written agreement of Agent, upon the Termination Date without further notice or order of Court, Debtors' authorization to use Cash Collateral hereunder will automatically terminate.

(b) Rights and Remedies. Upon the Termination Date, (i) Agent may file an emergency or expedited motion seeking relief from the automatic stay imposed by Code § 362(a) as to some or all of the Collateral (a "Stay Relief Motion") and obtain a hearing on the

Stay Relief Motion with three (3) business days' notice to counsel for the Debtors, counsel for any Committee appointed in these cases (or, prior to the appointment of a Committee, upon Debtors' 20 largest unsecured creditors) and the U.S. Trustee, (ii) the Debtors irrevocably consent to any Stay Relief Motion being heard on an expedited or emergency basis by the Court, and (iii) at any hearing on a Stay Relief Motion, the only issue to be decided by the Court shall be whether an Event of Default has occurred and exists. If the Stay Relief Motion is granted, Agent shall be entitled to exercise all rights and remedies available to them under the Prepetition Documents and applicable nonbankruptcy law, and the Debtors shall surrender the Aggregate Collateral and otherwise cooperate with Agent and Lenders in the exercise of their rights and remedies under the Prepetition Documents and applicable nonbankruptcy law, including, without limitation, by filing a motion to retain one or more agents to sell, lease or otherwise dispose of the Aggregate Collateral upon the request and subject to terms and conditions acceptable to Agent. Notwithstanding the foregoing, during the five (5) business day period following the Termination Date, Debtors may seek an order of this Court determining that an Event of Default alleged to have given rise to the Termination Date did not occur; provided, however, that during such five (5) business day period, Agent shall have no obligation to consent to any use of Cash Collateral.

(c) Access to Collateral. Upon approval of the Final Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtors' leased premises that an Event of Default has occurred and is continuing, Agent may enter upon such leased premises for the purpose of exercising any right or remedy with respect to the Aggregate Collateral located thereon and shall be entitled to the Debtors' rights and privileges under such lease(s) without interference from such landlord; provided that Agent shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by Agent, calculated on a per diem basis.

5. Carveout.

(a) Carveout Terms. The Carveout with respect to each Carveout Professional: (1) shall equal an aggregate amount not to exceed the lesser of (i) the aggregate amount provided in the Budget for such Carveout Professional for the period commencing on the Filing Date and ending on the Termination Date and (ii) the aggregate amount of allowed fees and expenses that accrue during the period commencing on the Filing Date and ending on the

Termination Date; (2) shall be reduced dollar-for-dollar by any payments of fees and expenses to such Carveout Professional; and (3) shall be paid out of any prepetition retainer or property of the estate (other than property subject to an unavoidable lien in favor of the Agent) before such payments are made from proceeds of the Aggregate Collateral.

(b) Carveout Usage. No portion of the Carveout and no Aggregate Collateral may be used to pay any fees or expenses incurred by any entity, including the Debtors, any Committee or the Carveout Professionals, in connection with claims or causes of action adverse to Agent's or Lenders' interests in the Aggregate Collateral, including (1) preventing, hindering or delaying Agent's or Lenders' enforcement or realization upon any of the Aggregate Collateral once an Event of Default has occurred; (2) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Aggregate Collateral without Agent's and Lenders' consent; or (3) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or any mortgages, liens or security interests with respect thereto or any other rights or interests of Agent and Lenders, or in asserting any claims or causes of action, including, without limitation, any Avoidance Actions or other actions under chapter 5 of the Code, against any of the Lender Parties; provided, however, that the foregoing shall not apply to costs and expenses, in an amount not to exceed $25,000 in the aggregate, incurred by the Committee's professionals in connection with the investigation of any potential Challenge in accordance with Paragraph 7 of this Order; provided, further, however, that the Carveout may be used to pay fees and expenses incurred by the Carveout Professionals in connection with the negotiation, preparation and entry of this Order or any amendment hereto consented to by Agent.

(c) Carveout Procedure. The Debtors shall periodically, upon the request of the Agent, provide to the Agent a written report (the "Carveout Report"), in which the Debtors disclose their then current estimate of (1) the aggregate amount of unpaid professional fees, costs and expenses accrued or incurred by the Carveout Professionals, through the date of the Carveout Report, and (2) projected fees, costs and expenses of the Carveout Professionals for the 30 day period following the date of such Carveout Report. Nothing herein shall be construed as consent by Agent and Lenders to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Agent or any Lender to object to the allowance and payment of such fees, costs or expenses, or the right of Agent or any Lender to the return of any

portion of the Carveout that is funded with respect to fees and expenses for a Carveout Professional that are approved on an interim basis that are later denied on a final basis. For the avoidance of doubt, no Carveout Professional shall be entitled to any portion of the Carveout allocated for any other Carveout Professional in the Budget.

6. No Surcharge. In the exercise of their business judgment, subject to entry of the Final Order, Debtors agree that there shall be no surcharge of the Aggregate Collateral for any purpose, unless agreed to by Agent and Lenders. The foregoing agreement by the Debtors shall be binding on any Trustee. Further, Debtors represent that the Budget contains all expenses that are reasonable and necessary for the operation of their businesses and the preservation of the Aggregate Collateral through the period for which the Budget runs, and therefore includes all items potentially chargeable to Agent and Lenders under Code § 506(c). Therefore, effective upon entry of the Final Order, the Debtors (and any Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against the Agent, the Lenders or the Aggregate Collateral. In reliance on the foregoing, Agent and Lenders have agreed to the entry of this Order.

7. Reservation of Rights; Bar of Challenges and Claims. The stipulations and representations contained in this Order, including, without limitation, in Paragraph D, shall be binding on all Challenge Parties, unless and solely to the extent that (i) the Debtors receive notice of a potential Challenge during the Investigation Period from any Challenge Party and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.

(a) Challenge Procedure. During the Investigation Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors during the Investigation Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors are so notified, the Debtors shall have five (5) days to notify the Challenge Party of whether the Debtors intend to initiate such action and ten (10) days to initiate such action. If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to initiate an action or adversary proceeding. Nothing herein shall be

deemed to grant standing in favor of any Challenge Party absent further order of this Court. The Debtors, if timely notified of a potential Challenge, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of this Court.

(b) Bar of Challenges and Claims. If the Debtors do not receive notice of a potential Challenge during the Investigation Period (or such later date as agreed in writing by Agent and Lenders, solely with respect to a potential Challenge against such party, or for cause shown by an order of this Court), without further order of the Court, (1) the claims, liens and security interests of the Agent and the Lenders shall be deemed to be allowed for all purposes in these Cases and shall not be subject to challenge by any party in interest as to extent, validity, priority or otherwise, and (2) the Debtors and their estates shall be deemed to have waived, released and discharged the Lender Parties and their respective officers, directors, principals, attorneys, consultants, predecessors in interest, and successors and assigns of and from any and all claims and causes of action, including Avoidance Actions, indebtedness, and obligations, of every type, which occurred on or prior to the date of entry of this Order with respect to or in connection with the Prepetition Debt, the Prepetition Liens, the Prepetition Documents or otherwise.

8. Right to Credit Bid. Subject to Paragraph 7 of this Order, in connection with the sale or other disposition of all or any portion of the Aggregate Collateral, whether under Code § 363, Code § 1129 or otherwise, pursuant to Code § 363(k), Agent shall have the right to use the Prepetition Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral.

9. Application of Sale Proceeds. All proceeds from sales or other dispositions of all or any portion of the Aggregate Collateral other than in the ordinary course shall be remitted to Agent for application to the Prepetition Debt, subject to Paragraph 7.

10. Allowance of 506(b) Amounts. Subject to Paragraph 7, upon receipt by the Debtors of the Agent's periodic summary invoices, the Debtors are authorized and directed to pay such amounts immediately as Allowable 506(b) Amounts.

11. Waiver of Right to Return/Consent to Setoff. Debtors hereby (a) waive their rights to return any of the Aggregate Collateral pursuant to Code § 546(h) and (b) agree that the Debtors shall not consent to any order permitting any claims pursuant to Code § 503(b)(9) or consent to setoff pursuant to Code § 553 without the prior consent of the Agent or further order of this Court.

12. Indemnification. Debtors shall indemnify and hold harmless Agent and Lenders in accordance with the Prepetition Credit Documents.

13. No Marshaling. Neither Agent nor any Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

14. Force and Effect of Prepetition Documents. Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents shall remain in full force and effect with respect to the Prepetition Debt. To the extent there exists any conflict among the terms of the Motion, the Prepetition Documents and this Order, this Order shall govern and control.

15. Modification of Stay. The automatic stay of Code § 362 is hereby modified with respect to Agent and Lenders to the extent necessary to effectuate the provisions of this Order, including, after the Termination Date, to permit Agent and Lenders to exercise their respective rights contemplated by Paragraph 4 above.

16. No Waiver. Agent and Lenders shall not be deemed to have suspended or waived any of their rights or remedies under this Order, the Code, the Prepetition Documents, or applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Agent or the Lenders, as applicable, and directed to Debtors. No failure of Agent or Lenders to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Agent or Lenders thereafter to demand strict compliance and performance therewith, and no delay on the part of Agent or Lenders in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Agent or the Lenders of any of their rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation

their right to later assert: (1) that, any of their interests in the Aggregate Collateral lack adequate protection within the meaning of Code §§ 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

17. "Responsible Person." Agent and Lenders shall not, solely by taking actions authorized by this Order, be deemed to be in control of the operations or liquidation of Debtors, or be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors. The foregoing provision of this Paragraph 18 shall not be effective until entry of the Final Order.

18. Release. Upon the date that the Prepetition Debt is paid in full in cash, and as a condition to the release of the Prepetition Liens, Debtors shall execute and deliver to Agent and Lenders, for the benefit of all of the Lender Parties, a general release of any and all claims and causes of action that could have been asserted or raised under or in connection with the Prepetition Documents, including Transfers related thereto.

19. Amendments. Debtors, Agent and the Lenders required under the Prepetition Credit Agreement may enter into amendments or modifications of the Prepetition Documents or the Budget without further notice and hearing or order of this Court; provided, that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with this Court.

20. Proof of Claim. Neither the Agent nor any of the Lenders shall be required to file a proof of claim with respect to any of the Prepetition Debt and the stipulations and findings set forth in this Order shall constitute an informal proof of claim in respect thereof. Notwithstanding the foregoing or any subsequent order of Court concerning proof of claim filing requirements, Agent is authorized (but not obligated) to file a single master proof of claim in **[Case No. ________]** on behalf of itself and the Lenders on account of their claims arising under the Prepetition Documents and hereunder and such master proof of claim shall be deemed filed as a claim against each of the Debtors.

21. Binding Effect. Except as provided in Paragraph 7 herein, this Order shall be binding on all parties in interest in the Cases and their respective successors and assigns,

including any Trustee, except that any Trustee shall have the right to terminate this Order after notice and a hearing. If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of the Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) subject to Paragraph 7 of this Order, the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Agent and Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

22. Survival. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order shall continue in full force and effect until all of the Prepetition Debt is indefeasibly paid in full in cash and discharged.

23. Notice of Final Hearing. The Final Hearing is scheduled for August [__], 2014, and may be continued from time to time without further notice other than that given in open court. Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Agent, Debtors' other secured creditors, Debtors' twenty (20) largest unsecured creditors, and the United States Trustee, which service shall constitute adequate and proper notice of the Final Hearing. Any objection to the Order must be filed with the Court and received by counsel for the Debtors, the Agent, and the United States Trustee no

later than seventy-two (72) hours prior to the commencement of the Final Hearing. Any timely and properly filed and served objection will be heard at the Final Hearing.

[____________________________________]
Hon. [____________________]
United States Bankruptcy Judge

Dated: _______, 2014

# EXHIBIT A

## DEFINED TERMS

1. ***Aggregate Collateral***. Collectively, the Prepetition Collateral and the Postpetition Collateral.

2. ***Allowable 506(b) Amounts***. To the extent allowable under Code § 506(b), interest at the default rate of interest as set forth in Section 2.2(d) of the Prepetition Credit Agreement, all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget), and all costs and expenses at any time incurred by Agent and Lenders in connection with: (a) the negotiation, preparation and submission of this Order and any other order or document related hereto, and (b) the representation of Agent and Lenders in the Cases, including in defending any Challenge.

**3.** ***Blocked Account.*** Account No. 7560679781 at Northbrook Bank & Trust Company.

4. ***Budget.*** The budget attached to this Order as Exhibit B, as amended, modified or supplemented from time to time, as may be agreed to by Agent and the Lenders required under the Prepetition Credit Agreement.

5. ***Carveout.*** Collectively, (a) all fees required to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), and (b) with respect to each Carveout Professional, the allowed fees and disbursements of as may be awarded to such Carveout Professional from time to time pursuant to Code § 330, in the aggregate amount set forth in Paragraph 5 of this Order.

6. ***Carveout Professionals.*** Berger Singerman, the professionals authorized by the Court to be retained by the Committee, and the United States Trustee.

7. ***Cases***. The chapter 11 cases and any superseding chapter 7 cases of the Debtors.

8. ***Cash Collateral***. All "cash collateral," as that term is defined in Code § 363(a), in which Agent (on behalf of Lenders) has an interest, all deposits subject to setoff rights in favor of Agent and Lenders, and all cash arising from the collection or other conversion to cash of the Aggregate Collateral, including from the sale of inventory and the collection of accounts receivable.

9. ***Challenge***. A claim or cause of action challenging the extent, validity, perfection, priority or enforceability of the Prepetition Debt, the Prepetition Liens or any other claims or causes of action against Agent and Lenders, which Debtors, the Committee, or another party-in-interest may bring, in accordance with Paragraph 7 of this Order.

10. ***Challenge Party***. The Debtors, the Committee, any Trustee, or other party-in-interest with the requisite standing.

11. ***Code***. The United States Bankruptcy Code (11 U.S.C. § 101 *et seq*.), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

12. ***Committee***. Any official creditors' committee appointed to represent unsecured creditors in these Cases pursuant to Code § 1102.

13. ***Event of Default***. At Agent's election, (a) the occurrence and continuance of any Event of Default (excluding Events of Default as a result of Debtors' failure to make quarterly principal payments pursuant to Section 2.1(a) of the Prepetition Credit Agreement or Debtors' failure to comply with the financial covenants set forth in Section 7 of the Prepetition Credit Agreement) first arising after the Filing Date under the Prepetition Credit Agreement; (b) Debtors' failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Order; (c) Debtors, without the consent of Agent, seek the use of Cash Collateral other than in accordance with the terms of this Order or seek to conduct a Code § 363 sale on terms unacceptable to Agent; (d) Debtors, without the consent of Agent, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or Replacement Liens or which is given superpriority administrative expense status under Code § 364(c); (e) Debtors file a motion to conduct a Code §363 sale of all or part of the Aggregate Collateral on terms unacceptable to Agent and Lenders, (f) Debtors file a chapter 11 plan that is not reasonably acceptable to Agent, (g) entry of any order authorizing any party in interest (other than a party with a Permitted Priority Lien) to reclaim any of the Aggregate Collateral, granting any party in interest (other than a party with a Permitted Priority Lien) relief from the automatic stay with respect to the Aggregate Collateral, or requiring that Debtors turnover any of the Aggregate Collateral, in each case prior to full, final and indefeasible repayment of all Prepetition Debt; (h) any material representation or warranty made by Debtors in any certificate, report or financial statement delivered to Agent is, after the Filing Date, discovered or disclosed to Agent to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (i) the filing of any motion to dismiss any Case or convert any Case to a case under chapter 7 of the Code (j) the dismissal or conversion of any Case to a case under chapter 7 of the Code; (k) a Trustee is appointed or elected in any Case, or an examiner with the power to operate Debtors' businesses is appointed in any Case; (l) commencement of an adversary proceeding or contested matter objecting to the extent, validity or priority of the Prepetition Debt or the Prepetition Liens; or (m) this Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by Agent.

14. ***Filing Date***. July 25, 2014.

15. ***Final Hearing***. The final hearing on the Motion conducted in accordance with Fed. R. Bankr. P. 4001.

16. ***Final Order***. A final order authorizing Debtors to use Cash Collateral entered at or in connection with the Final Hearing.

17. ***Guarantors***. Collectively, Samstock, L.L.C., a Delaware limited liability company, and EGI Fund (11-13) Investors, L.L.C., a Delaware limited liability company

18. ***Guaranty***. Collectively, the Guaranty dated as of November 19, 2013, executed by Samstock, L.L.C., and the Guaranty dated as of November 19, 2013, executed by EGI Fund (11-13) Investors, L.L.C.

19. ***Investigation Period***. The period from the Filing Date until the date that is the earlier of (1) seventy-five (75) days after the Filing Date, and (2) sixty (60) days after the date that a Committee is formed.

20. ***Obligations.*** The "Obligations" (as that term is defined in the Prepetition Credit Agreement), including, without limitation, Bank Product Obligations.

21. ***Permitted Priority Liens***. Collectively, (a) the Carveout, and (b) liens in favor of third parties upon the Prepetition Collateral, which third-party liens, as of the Filing Date: (1) had priority under applicable law over the Prepetition Liens, (2) were not subordinated by agreement or applicable law, and (3) were non-avoidable, valid, properly perfected and enforceable as of the Filing Date.

22. ***Permitted Variance***. With respect to each weekly line item in the Budget, an amount equal to 10% of the amount set forth in the Budget, tested on a rolling four-week basis; provided, however, that the aggregate, cumulative variance for all line items shall not exceed $250,000.

23. ***Postpetition Collateral***. All of the real and personal property of Debtors of any description whatsoever, wherever located and whenever arising or acquired, including all cash, accounts, inventory, equipment, fixtures, chattel paper, general intangibles (excluding claims and proceeds under Code §§ 544, 547, 548, 549, 550 and 553), all leaseholds, all commercial torts, all other "Collateral" (as that term is defined in the Prepetition Credit Agreement), and all proceeds, rents, issues, profits and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing.

24. ***Prepetition Collateral***. All of the "Collateral" (as that term is defined in the that certain Security Agreement dated as of November 19, 2013, by and among Debtors and Agent (on behalf of the Lenders)) existing as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

25. ***Prepetition Credit Agreement***. That certain Credit Agreement dated as of November 19, 2013, by and among Debtors, Agent and Lenders party thereto, as amended, modified and supplemented from time to time.

26. ***Prepetition Debt***. (a) All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including all Obligations, and all fees, costs, interest, and

expenses as and when due and payable pursuant to the Prepetition Documents, plus (b) all Allowable 506(b) Amounts.

27. ***Prepetition Documents***. The Prepetition Credit Agreement and the "Loan Documents" (as that term is defined in the Prepetition Credit Agreement), including, without limitation, "Bank Product Agreements" (as that term is defined in the Prepetition Credit Agreement).

28. ***Prepetition Liens***. Agent's (on behalf of Lenders) asserted security interests in the Prepetition Collateral under the Prepetition Documents, subject only to Permitted Priority Liens.

29. ***Priority Liens***. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to recharacterization or subordination pursuant to any provision of the Code, any agreement, or applicable nonbankruptcy law.

30. ***Replacement Liens***. Priority Liens in the Postpetition Collateral granted to Agent (for the benefit of the Lenders) pursuant to this Order, subject only to the Permitted Priority Liens.

31. ***Termination Date***. At Agent's election, the earliest to occur of: (a) the date on which Agent provides, via facsimile or overnight mail, written notice to counsel for Debtors and counsel for any Committee of the occurrence and continuance of an Event of Default; (b) the date that is 21 days following the entry of this Order if the Final Order is not entered in form and substance satisfactory to Agent by such date; (c) the date of the Final Hearing, if this Order is modified at the Final Hearing in a manner unacceptable to Agent and Lenders; (d) the closing date of the sale of all or substantially all of the Aggregate Collateral; and (e) the date on which the Prepetition Debt is paid in full in cash.

32. ***Trustee***. Any trustee appointed or elected in the Cases.

**EXHIBIT B**

**BUDGET**

**[attached]**

WRS
Post-petition Budget

| | Post-petition Budget |
|---|---|
| Incoming Cash | $ 25,012 |
| Payroll | $ (872,705) |
| Payables | $ (1,486,000) |
| 401K | |
| Rent & Utilities | $ (44,061) |
| Insurance | $ (96,710) |
| Healthcare | $ (120,000) |
| Equipment Loans / Vehicles | $ (30,000) |
| equipment Sale/Proceeds | $ - |
| LEGAL | $ - |
| Misc. / Other | $ (30,000) |
| Operation Cash Outflows | $ (2,679,476) |
| | $ - |
| Net Operating Cash Flows | $ (2,654,464) |

**EXHIBIT "B"**

**OPERATING BUDGET**

WRS
Post-petition Budget

| | | Post-petition Budget |
|---|---|---|
| Incoming Cash | $ | 25,012 |
| Payroll | $ | (872,705) |
| Payables | $ | (1,486,000) |
| 401K | | |
| Rent & Utilities | $ | (44,061) |
| Insurance | $ | (96,710) |
| Healthcare | $ | (120,000) |
| Equipment Loans / Vehicles | $ | (30,000) |
| equipment Sale/Proceeds | $ | - |
| LEGAL | $ | - |
| Misc. / Other | $ | (30,000) |
| Operation Cash Outflows | $ | (2,679,476) |
| | $ | - |
| Net Operating Cash Flows | $ | (2,654,464) |